IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**LEATHERMAN TOOL GROUP, INC.,**
an Oregon Corporation,

    Plaintiff,

  v.

**ARMITAGE HARDWARE AND
BUILDING SUPPLY, INC.,** an Illinois
Corporation, d/b/a **ARMITAGE DIRECT** and
**LEATHERMANTOOL.COM**

    Defendants.

No. 3:14-cv-00823-MO

OPINION AND ORDER

**MOSMAN, J.**,

  Armitage Hardware ("Armitage") seeks enforcement of a proposed settlement agreement with Leatherman Tool Group, Inc. ("Leatherman"). Armitage does not meet its burden of proving that an enforceable contract exists, thus I DENY Defendant's motion to enforce settlement.

**I.   Background**

  On July 28, 2014, John McGrory, Plaintiff's counsel, sent an email to David Berten, Defendant's counsel, regarding a potential settlement. The email states:

> Leatherman would be willing to resolve this matter by Armitage entering into its standard Reseller Agreement, a copy of which is attached (along with Leatherman's standard UMP policy), and Armitage continuing to use its web-site. Please let us know if Armitage is interested in a settlement along these lines.

On August 1, McGrory sent an email to Berten asking: "Have you had an opportunity to consider this?" In late August, counsel had a few telephone conversations and exchanged emails.

On August 21, Berten emailed McGrory, stating: "I think we are close to being able to resolve the matter, but have a few additional requests/clarifications." Berten alleged that during a subsequent phone call, he informed McGrory that a settlement "along the lines" Plaintiff had suggested was acceptable and requested copies of Plaintiff's standard documents. (Def.'s Motion [20] at 3). This is disputed. McGrory's recollection is that in prior conversations the settlement was discussed, but that Berten was "very clear that before we reached [an] agreement he would have to review the terms (of the reseller agreement and policies). We did not get to the point where we were ready to put this into a settlement agreement, and I did not send him a proposed agreement." (McGrory Decl. [23] at 2-3). McGrory recalls Berten stating that Armitage would want money for attorney fees and would need to review Leatherman's standard settlement terms. *Id.*; (Plaintiff's Response [22] at 3). Defendant points out that McGrory never denies that Berten accepted Leatherman's offer during the call. (Def.'s Response [25] at 5). However, Plaintiff notes that Berten's declaration does not identify either the "date or length of the call, and does not specify what words he claims to have uttered to communicate Armitage's acceptance." (Plaintiff's Response [22] at 3).

On August 28, McGrory sent an email to Berten attaching the Leatherman Reseller agreement, Leatherman's pricing policies, and a copy of the general reseller policies. (Berten Decl. [21], Ex. C at 2). According to Armitage, this was the first time Berten reviewed the Reseller Agreement. (Def.'s Motion [20] at 3). Thirteen minutes later, Berten responded with: "On a quick review, we would at least need a side agreement to cover our situation."

It is undisputed that the "situation" in question is a provision in the agreement that would allow Leatherman to terminate the agreement with Armitage without cause, for any reason or no reason, as soon as the settlement went into effect. McGrory responded three minutes later with, "Agree."

On September 1, McGrory sent Berten an email stating: "This settlement idea has fallen apart on my end. I am sorry." Because of an email malfunction at Berten's office, he did not receive this email until the next day. On September 2, prior to receiving McGrory's email, Berten left a voicemail message for McGrory, stating that he needed to, "see whatever you guys are proposing in terms of the side-agreement to the other agreements that you sent," and asking for a call "so that we can talk about status." (Dec. of Prudhomme [24], Ex. 1).

## II. Analysis

It is undisputed that Oregon contractual law determines whether or not an enforceable settlement exists in this situation. "[T]he proponent of the alleged contract has the burden of establishing its existence and its terms. In order to warrant enforcement, proof of the contract must be 'clear, unequivocal and by a preponderance of the evidence.' 'In determining whether a contract exists and what its terms are, we examine the objective manifestations of intent, as evidenced by the parties' communications and acts.'" *Holdner v. Holdner*, 176 Or. App. 111, 120 (2001) (internal citations omitted). Seeking enforcement of a settlement agreement is akin to a claim for specific performance. *Hughes v. Misar*, 189 Or. App. 258, 260, n.2 (2003).

### a. Settled Terms

Armitage cites *Hughes* for the proposition that "when parties agree on the essential terms of a contract and there is nothing left for future negotiations, the fact that they also intended there to be a future writing that expresses their agreement more formally does not affect the

Page 3 – OPINION AND ORDER

immediately binding nature of the agreement." *Hughes,* 189 Or. App. at 264 (citing *Britt v. Thorsen*, 258 Or. 135, 137 (1971)). Armitage alleges that the July 28 email was a full settlement offer – if Armitage would enter into a Reseller Agreement, then it would be allowed to continuing using its website. They assert that this agreement covers the essential terms of their agreement and therefore have an enforceable settlement.

Armitage also makes a lot out of their contention that Berten accepted Leatherman's offer during the disputed phone call. Armitage points out that McGrory never expressly denies that Berten accepted the offer during that call, which they take as proof that Leatherman made an offer which Armitage accepted and thus, "[u]nder Oregon law, an enforceable settlement agreement arose when the offer was accepted." (Def.'s Reply [25] at 2).

Leatherman explains that not all of the essential terms to the contract had been agreed upon in the July 28 email, therefore enforcement is not proper here. "A valid contract exists only when there is a meeting of the minds and where all terms are either agreed upon or there is a method agreed upon by which open and disputed terms can be settled, such that nothing is left for future negotiation." *Dalton v. Robert Jahn Corp.*, 209 Or. App. 120, 132 (2006) (citing *Phillips v. Johnson*, 266 Or. 544, 555–56 (1973). Based on the email exchanges, it is not clear that all of the terms were agreed upon or settled. Berten did not reply to McGrory's July 28 offer until August 21, and his email indicates that not all of the terms were agreed upon on Armitage's end. Berten's email states that, "I think we are close to being able to resolve the matter, but have a few additional requests/clarifications." The terms "we are close" and "but have a few additional requests/clarifications" indicate that the settlement terms were still ongoing in Defendant's mind and that not all material terms were agreed upon and settled, as required for

specific performance. Berten's response is not evidence of a clear acceptance of the July 28 email.

Additionally, Berten's August 28 email notes that Armitage still "would at least need a side agreement to cover our situation." The term "need" indicates that Armitage still has not obtained a necessary requirement from their side before their acceptance of the settlement could be complete. Further bolstering their argument, Plaintiff points to Berten's characterization in this email of the "quick review" of the reseller policy document (which they note was replied to within thirteen minutes) as evidence that he had not conducted a thorough review, as an attorney would be expected to do before settling litigation and entering into an enforceable contract. These actions, or lack thereof, do not convey final acceptance.

### b. Parties conduct

Armitage alleges that Leatherman's actions following the disputed phone call are "objective manifestations that it both made an offer it anticipated would be accepted and that the offer was, in fact, accepted." (Def.'s Motion [20] at 6). Armitage cites as an example the fact that Leatherman took no actions in furtherance of its case during the July 28 and August 21 time frame. *Id.* It served no discovery, did not collect and produce any documents in discovery, and filed no motions with the Court. *Id.*

Leatherman believes that this argument is unreasonable. They point to *Hughes*, where the court cited the parties' cancelation of a previously scheduled deposition to be evidence of the parties' intent to settle. *Hughes,* 189 Or. App. at 265. Leatherman distinguishes this case by saying that, here, Leatherman showed no departure from its previous plans. (Plaintiff's Response [22] at 9). "[Leatherman] had refrained (whether reasonably or not) from serving discovery since the case was filed, and simply continued to do so. The fact that [Leatherman]

followed the same course of action before and after the alleged settlement does not, therefore, support a reasonable inference that the case settled between August 21 and 28." *Id.*

Leatherman also points to Berten's conduct before he learned that the settlement had fallen apart. According to McGrory, the two parties spoke about discovery requests and at no time during their call did Berten indicate that he thought they had reached a settlement. (McGrory Decl. [23] at 5-6). Additionally, McGrory stated that "Mr. Berten never informed me that he considered the case to be settled until September 2, 2014, two days after my September 1, 2014 email and one day after I reiterated by telephone that the settlement idea had fallen apart from my end." *Id.* at 6.

I agree with Leatherman's argument here. The parties' conduct does not indicate a settlement was reached.

### c. Lack of Agreement on a Material Term

No contract exists when there is a lack of agreement on material terms. *In re Marriage of Baldwin*, 215 Or. App. 203, 208 (2007). "A term is 'material' to an enforceable agreement when it goes to the substance of the contract and, if breached, defeats the object f the parties in entering into the agreement." *Johnstone v. Zimmer*, 191 Or. App. 26, 34 (2003). Here, a number of material terms have not been agreed upon. The termination provision of the Reseller Agreements and Armitage's rights post-termination are still unresolved. (McGrory Decl. [23] at 3). While it was established by both parties that a side agreement was necessary, McGrory notes that, "we never got to the point where we agreed, or even discussed, what those changes would be, or which specific terms would have to be modified." *Id.* "[W]e never discussed how we would change [the agreement], whether termination without cause would still be included, how long a notice period there would be, whether Armitage wanted a minimum duration for the Reseller Agreement, or how long that duration would be." (McGrory Decl. [23] at 3–4). The

Page 6 – OPINION AND ORDER

parties also did not agree on settlement terms, Armitage's request for attorney fees, and website language regarding Armitage's non-association with Leatherman. *Id.*; (Plaintiff's Response [22] at 10).

On occasion, Oregon courts have recognized ways that a contract can exist despite a lack of express agreement on certain terms. *See Siegner v. Interstate Prod. Credit Ass'n of Spokane*, 109 Or. App. 417, 430 (1991); *Adair Homes, Inc. v. Jarrell*, 59 Or. App. 80, 84–85 (1982). Plaintiff distinguishes these cases by noting that in those cases where the court found an enforceable contract, despite a lack of agreement on some terms, the agreement can be enforced if there is an "objective method agreed upon by which the parties can settle the terms as a matter of fact." *Siegner*, 109 Or. App. at 430. In the two cases cited above, the court looked at an agreed upon profit margin to determine the price for certain construction work, and loan amount necessary to pay for ranch operations for an agreed upon loan. In this case, unlike the cited cases, the purported settlement provides no way to determine what the parties would have agreed to in such an agreement, or even whether or not an agreement could have been reached. Specifically, there is no way to determine how long "Armitage would be locked in as a Reseller or what its post-termination rights were." (Plaintiff's Response [22] at 10).

In addition, no agreement had been reached concerning the primary reason for the litigation here – the use of the Leatherman mark on Armitage's website. The lack of such a term concerning future use of the website and the Leatherman mark is not minor and incidental. In fact, it goes to the "heart of the dispute" and would be expected to be a significant part of their settlement agreement. This lack of specificity goes to their contention that the parties lacked an agreement on the material terms of the contract, and thus does not provide the sufficient clear and unequivocal proof required for enforcement.

Page 7 – OPINION AND ORDER

### III. Conclusion

Defendants' motion to enforce settlement agreement [20] is therefore DENIED for the reasons outlined herein.

IT IS SO ORDERED.

DATED this   23rd   day of October, 2014.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge
Page 8 – OPINION AND ORDER